IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville February 25, 2009

## BOBBY RAY JOHNSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Coffee County**
**No. 36252     Charles Lee, Judge**

---

**No. M2008-01864-CCA-R3-PC - Filed May 7, 2009**

---

The petitioner, Bobby Ray Johnson, appeals the denial of his petition for post-conviction relief in which he challenged his 2004 Coffee County Circuit Court convictions of rape of a child. In this appeal, he contends that he was denied the effective assistance of counsel at trial. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

John E. Ford, Winchester, Tennessee, for the appellant, Bobby Ray Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Mike Layne, District Attorney General; and Jason M. Ponder, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In January 2004, a Coffee County Circuit Court jury convicted the petitioner, Bobby Ray Johnson, of two counts of rape of a child, *see* T.C.A. § 39-13-522(a) (1997), and the Coffee County Circuit Court imposed consecutive, 20-year sentences to be served at 100 percent by operation of law, *see id.* § 40-35-501(i)(1), (2)(I).

The petitioner's convictions stem from his forcing his girlfriend, Mary Fisher, to perform fellatio on the victim, 13-year-old C.O.[1] The victim, who had worked in the petitioner's "combination body and hunting shop," testified that on two occasions in 2001, prior to the September 11, 2001 terrorist attack, the petitioner forced Ms. Fisher to perform fellatio on him. *See State v. Bobby Ray Johnson*, M2005-02357-CCA-R3-CD, slip op. at 1-2 (Tenn. Crim. App.,

---

[1]As is the policy of this court, we identify the minor victim only by his initials.

Nashville, July 27, 2006). On each occasion, the petitioner videotaped the encounter and "was the instigator for the sexual acts." *Id.*, slip op. at 2. Ms. Fisher testified that she performed fellatio on the victim because "she was afraid that the [petitioner] would assault her again, and the beatings were becoming worse each time." *Id.* She confirmed the victim's testimony that the petitioner directed the sexual acts as he videotaped them, often telling Ms. Fisher and the victim to change positions. *Id.*, slip op. at 2-3. The petitioner admitted his participation in the sexual acts to Coffee County Investigator Billy Cook, explaining that "he engaged in the illicit activity because he was high on methamphetamine." *Id.*, slip op. at 3.

Following an unsuccessful appeal of the convictions and sentences to this court, *see generally id.*, and the denial of his application for permission to appeal to our supreme court, *see State v. Bobby Ray Johnson*, M2005-02357-SC-R11-CD (Tenn. Dec. 27, 2006), the petitioner filed a timely petition for post-conviction relief on December 18, 2007. Following the appointment of counsel, the petitioner filed an amended petition for post-conviction relief alleging that he was denied the effective assistance of counsel at trial, that the trial court violated the petitioner's privilege against self-incrimination by admitting into evidence his pretrial statement to police, that the trial court violated the petitioner's right to a fair and impartial jury by seating a juror with a prejudice against the petitioner, and that the cumulative effect of the above errors deprived the petitioner of a fair trial. In its response, the State denied the petitioner's allegation of ineffective assistance of counsel and averred that the remaining claims had been waived or previously determined.

At the July 17, 2008 hearing, the petitioner testified that trial counsel, whom he retained after his arrest, met with him only two times during the 23 months he was incarcerated in the county jail prior to trial. The petitioner claimed that during these meetings, trial counsel would "get loud" if the petitioner questioned him about the case. The petitioner testified that trial counsel avoided his telephone calls and that counsel would often hang up on the rare occasions that the two had telephone conversations. He stated that he had asked trial counsel to file a motion to suppress his pretrial statement to police on the basis that the officers violated his right to counsel in obtaining the statement. He explained,

> Well, I told him what they had - - the warrants they had for me, what they had charged me for, and they started questioning me about it, and I started answering a few questions about where I had been for the past eight months and stuff like that. Then they just started asking me some more questions about some stuff, and I told them I wanted a lawyer, I didn't want to answer no more questions. Then Billy Cook says that if I get a lawyer, he can't help me. He said if I didn't get a lawyer, he could get the charges dropped to a lesser charge, but if I got a lawyer that he couldn't help me none. I told him I would rather have - - speak to a lawyer anyway, and at that time, when I said that, he started writing that statement out. He wrote the statement hisself [sic], and he kept talking to me.

He convinced me that he could help me. I shouldn't have never signed it, and I signed a confession because I didn't know no better.

The petitioner testified that despite his request, counsel did not file a motion to suppress.

The petitioner stated that prior to trial, counsel informed him that he would have to testify at trial. Following the presentation of the State's proof, however, counsel advised him against taking the stand and told the petitioner that he "didn't have no chance of winning." The petitioner testified that after the trial resulted in his being convicted of both counts in the indictment, counsel told him that the State had offered a plea agreement that included a 20-year sentence. The petitioner claimed that trial counsel said he did not communicate the offer to the petitioner because the petitioner had previously indicated that he would not accept any plea offer.

The petitioner testified that during voir dire, he told counsel that juror Donnie Driver should be stricken for cause because he "had had disagreements with [Mr. Driver] and his son over the years, and [they were] not on good terms." The petitioner stated that Mr. Driver informed the trial court that he knew the petitioner but said nothing of their sour relationship.

The petitioner claimed that counsel never discussed Ms. Fisher's testimony with him and that counsel admitted he had not interviewed Ms. Fisher prior to trial. The petitioner stated that Ms. Fisher lied during her testimony and that counsel failed to challenge the perjured testimony. He also stated that counsel damaged his case by asking Ms. Fisher if she had used methamphetamine with the petitioner.

During cross-examination, the petitioner conceded that he was advised of his *Miranda* rights before signing his pretrial statement to police. He also admitted that at the time he gave the statement, he believed that Ms. Fisher would be in more trouble than he. The petitioner also acknowledged telling counsel at the beginning of their relationship that he would not accept any plea offer from the State. Finally, the petitioner admitted that trial counsel put forth the defense he requested which was that he had not touched the victim and could not, therefore, be guilty of rape.

Trial counsel, who had been practicing as a criminal defense attorney for more than 30 years at the time of the petitioner's trial, testified that after being retained by the petitioner, he obtained the discovery material, which included statements given by the petitioner, the victim, and Ms. Fisher. Counsel stated, "This case involved not a dispute as to facts[] but the interpretation of those facts." He stated that the theory of defense was that the petitioner "never . . . put a hand on this child." Counsel testified that he explained to the petitioner the principles of criminal responsibility law. He testified that he did not challenge the petitioner's statement to Investigator Cook because the statement supported the theory of defense. According to counsel, he advised the petitioner not to testify because the admission of the petitioner's statement gave the defense the benefit of the petitioner's side of the story without the potential damage of cross-examination.

Counsel testified that the petitioner told him on several occasions that he would not accept any plea agreement and stated that he had communicated the State's original 25-year offer and that the petitioner had rejected it. Counsel testified that following the petitioner's trial, he informed the petitioner that he was willing to seek "a plea agreement regarding the sentencing" but that the petitioner "was adamant" that he did not want to enter into any agreement.

Counsel stated that he met with the petitioner a sufficient number of times to allow for trial preparation. Counsel vehemently denied hanging up on the petitioner during their telephone conversations and also denied having any disagreements with the petitioner. He acknowledged, however, that "there were occasions [the petitioner] wanted to talk to [him], but [he] felt that it was unnecessary because [the petitioner] had nothing to add, other than what had been told earlier."

Counsel testified that although he could not recall having a discussion with the petitioner about Mr. Driver's serving on the jury, he had never "taken a juror that the defendant did not want."

During cross-examination, counsel stated that he told the petitioner that he would not file a motion to suppress the petitioner's statement because he "didn't think the motion would succeed" and because "the statement he made was consistent with what the proof was going to be at the trial of the case." Counsel acknowledged that the defense requested by the petitioner "was . . . a difficult defense" but stated, "It was the only defense we had." Counsel also acknowledged that he did not interview the victim, explaining that he could not "get in a private discussion with him" because he was a minor, or the co-defendant prior to trial, explaining that co-defendant's counsel would not permit an interview. He stated that the petitioner told him that "he didn't see any reason why [the co-defendant] would be unnecessarily hostile toward him." Counsel admitted that he did not check police or hospital records to try and determine the veracity of the co-defendant's claims of abuse because he "didn't anticipate . . . that she would be as hostile as she was."

At the conclusion of the hearing, the post-conviction court placed on the record its findings of fact and conclusions of law. The oral findings were later filed with the written order denying post-conviction relief. The post-conviction court specifically accredited counsel's testimony that he met with the petitioner more than twice and that the scope of the meetings was sufficient to appropriately apprise the petitioner of the status of the case and to allow counsel to properly prepare for trial. The court stated that it would not second-guess trial counsel's decision against seeking suppression of the petitioner's statement because the decision qualified as a reasonable tactical decision. The post-conviction court also accredited counsel's testimony that he communicated the plea offers to the petitioner and that the petitioner rejected them. Noting that it was troubled whether the petitioner understood the full range of punishment, the post-conviction court nevertheless concluded that "even if . . . the petitioner had the full range of punishment communicated to him in this case, it would . . . have [had] no effect upon his rejection of the State's offer." The court concluded that the petitioner was fully aware of his right to testify and that he voluntarily chose not to do so. Finally, the post-conviction court held that the petitioner had failed to present any evidence

-4-

that counsel should have asked that Mr. Driver be stricken from the jury or that he was prejudiced by counsel's failure to do so.

In this appeal, the petitioner reiterates his claim that trial counsel's deficient performance inured to his prejudice and argues that the post-conviction court erred by denying him relief. The State asserts that the denial of relief was appropriate. We agree with the State.

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). The error must be so serious as to render an unreliable result. *Id.* at 687, 104 S. Ct. 2064. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. *Id.* at 695, 104 S. Ct. at 2068-69. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

*Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not afforded the benefit of hindsight, may not second-guess a reasonable trial strategy, and cannot criticize a sound, although unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453,

461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Here, the petitioner complains that trial counsel should have filed a motion to suppress his pretrial statement admitting involvement in the crimes. Trial counsel's accredited testimony established that he decided against seeking suppression of the statement because the statement supported the theory of defense requested by the petitioner and because admission of the statement allowed the jury to hear the petitioner's version of the events without subjecting the petitioner to cross-examination by the State. This testimony supports the trial court's conclusion that counsel's decision qualifies as a tactical decision made as part of a reasonable trial strategy. In consequence, this claim affords the petitioner no relief.

The petitioner also complains that trial counsel failed to adequately prepare for trial. He specifically contends that trial counsel should have met with him more often prior to the trial and should have interviewed both the victim and Ms. Fisher prior to trial. Although counsel could not recall, and the post-conviction court was unable to determine, the precise number of times the two met, counsel testified that he did not believe he could have gleaned further useful information from more meetings with the petitioner. Further, the petitioner failed to establish prejudice from the perceived deficiency in communication. As regards pretrial interviews of the victim and Ms. Fisher, counsel testified that Ms. Fisher's attorney would not allow an interview and that the victim's status as a minor prevented a "private discussion." Again, the petitioner offers no proof of prejudice as a result of counsel's actions, save the bald assertion that the failure to conduct the interviews "amounts to ineffective assistance of counsel."

The petitioner also claims that trial counsel should have attempted to refute Ms. Fisher's claims of abuse at the hands of the petitioner, but the petitioner did not present any evidence at the evidentiary hearing, aside from his own testimony, that would tend to refute Ms. Fisher's claims. In consequence, he has failed to establish that counsel performed deficiently in this regard.

The petitioner complains that trial counsel performed ineffectively by failing to strike Mr. Driver from the jury. Other than the petitioner's statement that he and Mr. Driver were "not on good terms," the petitioner presented no proof of Mr. Driver's alleged prejudice or that this alleged prejudice was made known to the remainder of the jury. Because he has failed to establish his claim of deficient performance by clear and convincing evidence, he is not entitled to relief.

Finally, the petitioner contends that trial counsel's failure to communicate a plea offer from the State on the eve of trial "amounts to ineffective assistance of counsel that would certainly have affected the outcome of the trial." In so doing, the petitioner urges this court to reassess the credibility determination of the post-conviction court and lend credence to the petitioner's evidentiary hearing testimony. The post-conviction court unequivocally accredited the testimony of trial counsel that the petitioner knew of all plea offers by the State and rejected each of them.

Indeed, the petitioner himself admitted that he had told counsel that he would accept no offer from the State. Moreover, we may not go behind the credibility determinations made by the post-conviction court. In addition, we observe that although the petitioner makes much of the fact that the State offered no proof that the offers were communicated to the petitioner, it is the post-conviction petitioner who bears the burden of proof at the evidentiary hearing and now on appeal. He is not entitled to relief on this issue.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE